IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS CAREY, #211 205, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-832-WKW-CSC |
| | ) | [WO] |
| CUBE OPERATOR | ) | |
| MS. CUNNINGHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Demetrius Carey ("Carey"), proceeding *pro se*, files this 42 U.S.C. § 1983 Complaint challenging Defendants' alleged failure to protect him from harm and to provide constitutionally adequate medical care. According to the Complaint, during Carey's incarceration at the Bullock Correctional Facility in Union Springs, Alabama, an inmate stabbed him in the neck on July 9, 2018, which left him with a painful neck injury for which he claims he did not receive adequate pain management. Carey sues cubical operator Shirley Cunningham, Sergeant Omar Boynes, Sergeant Anthony Lambert, Lieutenant Waylon Cousins, Captain Timothy McCorvey, Warden Gwendolyn Babers, Warden Antonio McClain, and Warden Patrice Richie. Carey sues the named defendants in their individual capacities. For relief, Carey seeks justice for the alleged violation of his constitutional rights. *See* Docs. 1, 28, 30.

Defendants filed an Answer Written Report, and supporting evidentiary materials addressing Carey's claims for relief. Docs. 23, 24. In these filings, Defendants deny they

acted in violation of Carey's constitutional rights. Doc. 23. Upon receipt of Defendants' report, the Court entered an Order which provided Carey an opportunity to file a response. Doc. 25. This Order advised Carey his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 25 at 2. The Order further cautioned Carey that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the [written] report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion . . . in accordance with law." Doc. 25 at 2. Carey responded to Defendants' report, *see* Doc. 29, but his response does not demonstrate there is any genuine dispute of material fact. The Court will treat Defendants' Written Report, as a Motion for Summary Judgment, and recommends this motion be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) (holding that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court

2

of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Carey to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ*., 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Carey's *pro se* status alone does not compel this Court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION[1]

### A. Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his

---

[1] To the extent Carey raises additional allegations of constitutional violations through any properly supported opposition which were not affirmatively pled in his Complaint, under settled law, a plaintiff may not "amend" his complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining thta the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Carey's claims against Defendants as alleged in the Complaint and considers the facts only to the extent that they support those claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

4

discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the challenged incidents occurred. Carey must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Carey must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565

U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**B.     Deliberate Indifference**

   **i.     Standard of Review**

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (citations and quotation marks omitted). Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Id.* at 828. "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,'

6

prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this

7

substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 14 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Carey must first demonstrate an objectively substantial risk of serious harm existed to him prior to the inmate attack at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Carey must then satisfy the subjective component. To do so, Carey

9

"must [show] that the defendant subjectively knew that [Carey] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he[/she] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a particular threat or fear *felt by [the] [p]laintiff*. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference. *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

### ii. Failure to Protect

Carey alleges that on July 9, 2018 at approximately 10:00 p.m. an unknown inmate stabbed him in the neck. The attack, Carey maintains, would not have occurred if Sgt. Boynes had been on his assigned post in E Dorm at the time of the incident. Carey acknowledges that neither he nor prison officials had any knowledge of the identity of the inmate who assaulted him. Doc. 1 at 2–3.

Defendants maintain that Carey has not demonstrated they acted with deliberate indifference to his safety. Defendants' evidentiary submissions include Defendants' affidavits, incident and duty officer reports, shift logs, duty rosters, and medical records. Sgt. Boynes testifies that on July 9, 2018, he was assigned as the rover for Dorm E1-E2.

On that day at approximately 9:55 p.m. he had just completed his security checks for Dorms E1 and E2 when Carey approached him at the Dorm E1 grill gate and informed the guard he had just been stabbed. Sgt. Boynes notified the B Night Shift Commander—Lt. Cousins—of the incident who reported to the dorm and immediately escorted Carey to the health care unit for assessment. Lt. Cousins questioned Carey about the incident who stated he had been sitting on his bed when someone stabbed him from behind.[2] Lt. Cousins questioned several inmates in Dorm E1 about the attack, none of whom had seen anyone get stabbed. At approximately 1:00 a.m. medical personnel informed Lt. Cousins that Carey required transport by ambulance to the Bullock County emergency room for further medical treatment. Lt. Cousins notified Warden McClain and the Investigations and Inspections Unit (I & I) that Carey required off-site medical care. After being treated at the emergency department, Carey was returned to Bullock and placed in the Restricted Housing Unit pending further investigation. Docs. 23-2—23-14, 23-16.

Here, Carey does not allege that prior to the challenged incident he complained to any prison official, or made any prison official aware, that he was in danger of being attacked by a fellow inmate. Carey acknowledges his unawareness of the identity of his attacker and does not indicate he knew he was in any danger prior to the attack. Docs. 1, 29. It is undisputed Defendants had no information of any threat to Carey from another inmate from which they could infer that a substantial risk of harm existed to Carey prior to

---

[2] Carey informed Lt. Cousins that he had been in an argument earlier in the day with another inmate. Lt. Cousins questioned the inmate identified by Carey who admitted to having argued with Carey but denied stabbing him. Doc. 23-9 at 1.

11

the attack at issue. Instead, the record establishes that the altercation occurred without notice or provocation while Carey was sitting on his bed and was stabbed from behind. There is no evidence any correctional officer witnessed the assault, and the first knowledge correctional officials received regarding the incident occurred when Carey reported to Sgt. Boynes that he had been stabbed. Docs. 23-2—23-10. Carey has also not shown that the conditions under which he was incarcerated presented a "substantial risk of harm" to him. *Farmer,* 511 U.S. at 834, to which Defendants responded in an objectively unreasonable manner. *Marsh,* 268 F.3d at 1028–1029. His conclusory allegations of unsecure conditions is insufficient. Docs. 29, 29-1.

Even had Carey satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any defendant subjectively knew of a risk of harm to him posed by his inmate attacker and no evidence has been produced that any defendant knew Carey faced a substantial risk of harm. *Caldwell,* 78 F.3d at 1099–1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Further, and without disputing that inmate-on-inmate assaults occur in the correctional system, even assuming the institutional facility was experiencing understaffing at the time of the assault on Carey, such is insufficient to establish Defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm. *Johnson*, 568 F. App'x at 722 (explaining that complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants

subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (observing that although increasing the number of officers in an area of the facility "may have improved security [at the prison, the warden's] decision not to do so did not create a substantial risk of harm."); *Johnston*, 135 F. App'x at 377 (observing that where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (explaining that plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to.").

The record is devoid of evidence Defendants knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Carey, that Defendants actually drew this inference, and, thereafter, ignored the known risk. Here, Carey has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a

substantial risk of harm. Rather, the evidence indicates that the inmate attack on Carey was a sudden, isolated incident. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat'  from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]."); *Brown*, 894 F.2d at 1537 (holding that "negligent failure to protect an inmate from attack does not justify liability under § 1983."). The inmate assault on Carey was an unfortunate event. It does not, however, reflect deliberate indifference by Defendants. The evidence reflects the event complained of occurred in a random, spontaneous, and quick manner. Correctional officers responded to the incident upon becoming aware of the situation. Carey received prompt medical care and attention, and correctional personnel immediately reported the incident to the appropriate prison officials at Bullock. Docs. 23-2–23-10.

Because Carey has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. *Carter*, 352 F.3d at 1350. Since the record fails to demonstrate that the inmate assault on Carey occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity on Carey's failure to protect claim.

### iii. Medical Care

Carey alleges medical staff failed to provide him with adequate medical care and treatment for the injuries he sustained in the inmate attack on July 9, 2018. He complains of having to repeatedly ask for pain medication and muscle relaxers every five days which he states "[he] shouldn't have to do." Doc. 1 at 3.

To prevail in a suit based on an Eighth Amendment claim about medical attention, a prisoner must show, at a minimum, that prison or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

A correctional officer may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825. "When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). *See also Hopkins v. Britton*, 742 F.2d 1308, 1310

(11th Cir. 1984); *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).[3] A claim about a failure to provide immediate medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994).

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. . . Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." . . . An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. . .  Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Id*. at 1188-89.

Defendants' evidence shows Carey reported his injury to Lt. Boynes at 9:55 p.m. At 10:01 p.m. Carey arrived at the health care unit for a body chart. Medical personnel noted a laceration to the right side of Carey's neck, found he was not in distress, and indicated he would be held in the health care unit pending notice from the provider. The prison physician subsequently directed medical personnel to arrange Carey's transport to the Bullock County emergency room for further medical treatment. Carey was returned to Bullock

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

within a few hours and processed into the Restrictive Housing Unit pending an investigation into the incident. Docs. 23-9, 23-13, 23-14.

The medical provider prescribed Carey pain medication and a muscle relaxer for his stab wound. Medical personnel routinely saw Carey while he was housed in the Restricted Housing Unit. Three weeks after the challenged incident occurred, medical personnel responded to a grievance submitted by Carey on July 26, 2018, regarding his medical care noting the physician had ordered him pain medication and a muscle relaxer, his wound was healing well, there was no sign of infection, and the doctor would continue to monitor him for pain and wound healing. Docs. 23-15, Doc. 23-16 at 15.

Defendants argue that Carey's allegations of inadequate medical care fail to set forth any facts tending to suggest that they exhibited deliberate indifference to his medical needs. Review of Carey's Complaint reflects that he fails to implicate any of the named defendants regarding his allegation of inadequate medical treatment. *See* Doc. 1. And Carey does not point the Court to any evidence that would support an inference that Defendants ignored a serious medical condition, that he suffered any detrimental effect as a result of any actions by Defendants, or, as noted, that they were in any way responsible for the alleged actions about which he complains. In addition, Carey presents the Court with no evidence Defendants in any way disregarded a substantial risk to his health by interfering with his ability to receive or access medical treatment. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Nor has Carey come forward with evidence that any Defendant knew he faced as a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, supra; *see also Spruill v. Gillis*, 372 F.3d 218, 236

(3d Cir. 2004) (holding that in the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (holding that "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing.") (internal quotations omitted); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (explaining that a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).

The burden is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine dispute of material fact regarding an essential element of the claim. *Celotex*, 477 U.S. at 322. The plaintiff must go beyond the pleadings and "designate specific facts showing that there is a genuine dispute for trial. *Id.* at 324. Here, the Court finds Carey fails to establish a genuine dispute about deliberate indifference on the part of Defendants regarding his allegation of inadequate medical care. The Court, therefore, concludes Defendants are entitled to qualified immunity on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 23) be GRANTED.

2. This case be DISMISSED with prejudice.

3. Judgment be ENTERED in favor of Defendants.

The parties may file an objection to the Recommendation **on or before July 7, 2021**. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 23rd day of June 2021.

      /s/ Charles S. Coody  
      CHARLES S. COODY  
      UNITED STATES MAGISTRATE JUDGE